**C & G BOATS, INC.**

v.

**TEXAS OHIO SERVICES, INC.**

Civ. A. No. 95–2076.

United States District Court,
E.D. Louisiana.

Nov. 17, 1995.

Stewart Foster Peck, Loree G. Peacock, Lugenbuhl, Burke, Wheaton, Peck, Rankin & Hubbard, New Orleans, LA, for plaintiff.

Robert Craig Stern, Perrin C. Butler, Butler & Stern, Metairie, LA, for defendant.

## ORDER AND REASONS

JONES, District Judge.

Pending before the Court is Texas Ohio Services' "Motion to Set Aside Entry of Default." The matter was submitted on a previous date without oral argument. Having reviewed the memoranda of the parties, the record and the applicable law, the Court GRANTS Texas Ohio Services' Motion.

### Background

This is a commercial litigation action between C & G Boats, Inc. ("C & G"), and Texas Ohio Services, Inc. ("TOS"), resulting from the alleged use of one of C & G's vessels, the M/V ADA B. CALLAIS, by TOS. C & G instituted this litigation on June 27, 1995, and service of process was made on TOS's registered agent C.T. Corporation System ("C.T."), on June 29, 1995. Thus, under Fed.R.Civ.P. 12(a), TOS's answer to the complaint was due on July 19, 1995.[1]

Having reviewed the complaint, on July 10, 1995, T. Pat Harrison, president of TOS, corresponded with C & G indicating that certain invoiced charges allegedly due in the

---

1. It is undisputed that the summons unequivocally put TOS on notice that failure to file an answer within twenty days would result in an entry of a default. (Exh. A, attached to Plaintiff's Opposition to the Motion to Set Aside Default.)

complaint were in dispute but expressed a willingness to pay other undisputed charges.[2]

On August 4, 1995, C & G requested that a default be entered against TOS and on August 10, 1995, such default was entered. (R.Doc. 3.) On August 15, 1995, TOS's Texas counsel contacted Louisiana counsel to advise that the complaint had been turned over to him for handling and, on checking on the status of the matter, learned of the August 10th entry of default.

On August 16, 1995, TOS's Louisiana counsel discussed this matter with C & G's counsel and requested an agreement to set aside the entry of default. C & G's counsel advised him that he would have to consult with his client and doubted that it would agree to set aside the entry of default. Accordingly, TOS's counsel prepared and filed an answer on that date. C & G simultaneously filed a Motion to Confirm the Default on this same date, which was not signed by the Court. (R.Doc. 10.) Thereafter, on August 17, 1995, TOS filed the instant "Motion to Set Aside Default."

### Law and Application

■ Fed.R.Civ.P. 55(c) provides that an entry of default may be set aside if the party seeking relief shows good cause. In determining whether to set aside an entry of default, the district court should consider (1) whether default was willful, (2) whether setting it aside would prejudice the adversary, and (3) whether a meritorious defense is presented. *CJC Holdings, Inc. v. Wright & Lato Inc.*, 979 F.2d 60, 64 (5th Cir.1992) (*citing United States v. One Parcel of Real Property*, 763 F.2d 181, 183 (5th Cir.1985)). These factors are not "talismanic." *Id.* Courts have been careful to avoid treating them as though they were exclusive, relying on such óther factors as whether: (1) the public interest was implicated, (2) there was a significant financial loss to the defendant, and (3) the defendant acted expeditiously to correct the default. *Dierschke v. O'Cheskey (In re Dierschke)*, 975 F.2d 181, 184 (5th Cir.1992). More specifically, the Fifth Circuit has joined those circuits that have treated the tripartite test in *One Parcel of Real Property* as disjunctive. *Id.* at 183–84. Nevertheless, the ultimate inquiry remains whether the defendant shows "good cause" to set aside the default. *CJC Holdings, Inc.*, 979 F.2d at 64.

■ "Good cause" that will support grant of relief from default is not susceptible of precise definition; no fixed, rigid standard can anticipate all of the situations that may occasion failure of a party to timely answer a complaint. *In re Dierschke*, 975 F.2d at 183. Whatever factors are employed in determining whether to set aside entry of default, the imperative is that they be regarded simply as a means of identifying circumstances which warrant the finding of "good cause" to set aside a default. *Id.* at 184. That decision necessarily is informed by equitable principles. *Id.*

■ In the case at bar, such "good cause" exists to set aside the entry of default. Although willful failure alone may constitute sufficient cause for the court to set aside a default, the record does not indicate that TOS's failure to answer within the time limit was willful. *Id.* at 184–85. Granted Mr. Harrison's July 10, 1995 letter to C & G appears to acknowledge receipt of a summons, this is not tantamount to willful failure to file an answer within the time limit. Indeed, while Mr. Harrison's letter indicates that he was disputing several invoices, it also demonstrates a willingness to pay the undisputed amounts. Moreover, when the complaint was turned over to TOS's counsel for a response, an answer was filed within several days, which indicates that the defendant acted expeditiously to correct the default.

Contrary to plaintiff's assertions, this is not a case of contrived arrogance, disregard, an uncooperative party or an obstructionist adversary. Rather, it is one of a mistake or inadvertent oversight unlike the *Dierschke* case where both the defendant and his counsel were served and counsel discussed the matter with defendant before the answer was due; whereas, here only the defendant was indirectly served. *Id.*, 975 F.2d at 182. And

---

**2.** This acknowledgement is ratified in a July 10, 1995 letter. (Attachment to Defendant's Memorandum in Support of Motion to Set Aside Default.)

as defendant explained, because he received the complaint from C.T. via Federal Express and was not served by a marshal or constable as wont, he misapprehended the legal requirement for an answer. The fact that defendant sent the July 10, 1995 letter puts this issue beyond dispute that there was no intention to ignore the situation. Hence, palpable culpability through defendant's conduct is found wanting.

Secondly, there is no evidence in the record that C & G will be prejudiced if the default decree is set aside. In *One Parcel of Real Property*, the United States brought an action seeking forfeiture of real property on the ground that it constituted proceeds traceable to the exchange of controlled substances. *Id.*, 763 F.2d at 182. The district court entered a default decree ordering forfeiture of the property and the record owner appealed. *Id.* at 183. The Fifth Circuit Court of Appeals found that the fact that setting aside the default would delay forfeiture of the property if the government were to succeed at trial or would require the government to litigate the action was insufficient prejudice to require the default decree to stand. *Id.*

Similarly, the fact that setting aside the default would delay collection of the amount in dispute if C & G were to succeed at trial or would require C & G to litigate the action is insufficient prejudice to require the default decree to stand.

Plaintiff, however, does not rely on either of the foregoing grounds, but instead maintains that where no clear meritorious defense exists, any delay to plaintiff's rights automatically amounts to an undue prejudice. (R.Doc. 9, p. 7.) Convinced that defendant has in fact stated a meritorious defense, and for lack of a compelling evidentiary basis by plaintiff, this argument is misplaced and must fail.

Finally, TOS has presented a *prima facie,* or at least in the vernacular of *One Parcel of Real Property,* an "obtuse" showing of a meritorious defense to C & G's claims. *Id.* at 183. As set forth in T. Pat Harrison's letter of July 10, 1995, defendant's "Answers" and intervening "First Supplemental and Amending Answer" (R.Doc. 8), TOS manifestly disputes—with sufficient specificity—the amount that C & G claims it is due. (R.Docs. 4 and 8, pp. 2 and 1, respectively.) C & G has made no allegation that TOS's contentions are without merit, except to offer rhetorical support for the proposition that defendant failed to "absolutely" state a meritorious defense with specificity. (R.Doc. 9, pp. 6–7.) Thus, in fidelity to Fed.R.Civ.P. 55(c) which liberally favors trials on the merits, in recognition of the fact a motion to set aside a default is more readily granted (and less vigorously exacting) than a motion to set aside a default judgment for excusable neglect, and in acknowledgement of the precept that courts "universally favor trial on the merits," the Court rebuffs plaintiff's claim that a meritorious defense was lacking. *See In re Dierschke,* 975 F.2d at 183 and 184.

Conclusion

On the record before the Court, the default was not willful, C & G will not be prejudiced if the default decree is set aside, and TOS alleges a meritorious defense. Nor are principles of equity adversely implicated. *Id.* at 184. Accordingly, the Court finds that there is "good cause" sufficient to set aside the entry of the judgment of default.

Wherefore,

IT IS ORDERED that TOS's "Motion to Set Aside Entry of Default" is **GRANTED.**